**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK,<br><br>       Debtor. | CHAPTER 11<br><br>Case No. 22-50073(JAM) |
| Zheng Wu, a/k/a Bruno Wu, and Yang Lan,<br><br>       Plaintiffs,<br><br>v.<br><br>Ho Wan Kwok,<br><br>       Defendant. | Adv. Proc. No. _____ |

**COMPLAINT TO DETERMINE DISCHARGEABILITY**

Zheng Wu, a/k/a Bruno Wu, and Yang Lan ("**Plaintiffs**"), by and through their undersigned attorneys, in support of this Complaint against Ho Wan Kwok a/k/a Guo Wengui (the "**Defendant**" or "**Debtor**") hereby, allege and state as follows:

**PARTIES**

1. Plaintiff Zheng Wu is successful Chinese-American investor and media entrepreneur and a published author. He holds a Bachelor's degree in business management from Culver-Stockton College of Missouri, a Master's degree in international relations from Washington University in St. Louis, and a Doctor of Philosophy (Ph.D.) from the School of

1

International Relations and Public Affairs at Fudan University. Mr. Wu is a creditor listed on the Debtor's list of top creditors filed in the Debtor's Bankruptcy Case (defined below).

2. Plaintiff Yang Lan is a leading broadcast journalist and media entrepreneur in China, well-known for her focus on social and cultural issues. Ms. Lan was recognized by Forbes as one of the world's 100 most powerful women. She has a Bachelor's degree in English language and literature from Beijing Foreign Studies University and a Master's degree in international affairs from Columbia University. Ms. Lan is a creditor listed on the Debtor's list of top creditors filed in the Debtor's Bankruptcy Case (defined below).

3. Plaintiffs have been married for more than twenty-five years and reside together in Beijing, China.

4. Ho Wan Kwok a/k/a Guo Wengui, the Defendant in this adversary proceeding, is a Chinese national, and the debtor in the above-captioned bankruptcy case (the "**Bankruptcy Case**"). Upon information and belief, the Defendant possesses passports from numerous countries, including those from Hong Kong, the United Arab Emirates, and the Republic of Malta, and uses a number of aliases, including Guo Wen Gui, Guo Haoyun and Miles Kwok, among others. The Defendant purports to presently reside in Connecticut, and, upon information and belief, at all times relevant to Plaintiffs and their claims, the Defendant resided in New York City.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the parties and this proceeding under 28 U.S.C. §§ 157 and 1334.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

7. Venue of this action is proper in this district pursuant to 28 U.S.C. § 1409(a).

8. The bases for the relief requested in this Complaint are 11 U.S.C. § 523(a)(6) and Federal Rules of Bankruptcy Procedure 4007 and 7001.

2

9. Plaintiffs demand a trial by jury on their claims against the Debtor and do not consent to trial in this Court.

## RELEVANT BACKGROUND

### I. The State Court Litigation and Plaintiffs Claims.

10. In 2018, Plaintiffs commenced a civil action in the Supreme Court of the State of New York, New York County (the "**State Court**"), Index No. 0152123/2018 (the "**State Court Litigation**"), against the Debtor, asserting claims for defamation, intentional infliction of emotional distress, and conspiracy to intentionally inflict emotional distress. In all, Plaintiffs asserted four causes of action in the State Court Litigation arising from their injuries intentionally caused by the Debtor, with two of those causes of action currently pending (collectively, the "**Plaintiffs Claims**"). The other two causes of action were dismissed.

11. A true and correct copy of the Plaintiffs' amended complaint in the State Court Litigation setting forth the Plaintiffs Claims (the "**State Court Complaint**") is attached hereto as Exhibit A. As alleged therein, the Debtor believes Plaintiffs are a threat to his political asylum application and his continued stay here in the United States. Commencing in 2017, the Debtor began targeting Plaintiffs and has undertaken a world-wide campaign to bully and intimidate Plaintiffs. The Debtor has intentionally and maliciously defamed each of the Plaintiffs. He also has conspired with others to intentionally and maliciously cause each of the Plaintiffs to be severely defamed, causing them substantial injury. *See, e.g.,* State Court Complaint ¶¶ 29-108.

12. The State Court Complaint is incorporated herein in its entirety by reference. Plaintiffs repeat and reallege each allegation of the State Court Complaint as if said allegation is fully set forth herein. As set forth in the State Court Complaint, the Debtor's intentional malicious conduct against the Plaintiffs include, but are not limited to, the following events:

### (a)    Defamation Against Plaintiff Ms. Lan (State Court Complaint ¶¶ 63-75)

13. Plaintiff Yang Lan is a household name in China and a leading broadcast journalist and media entrepreneur devoted to promoting general equality and women's professional development.

14. The Debtor has sought to tarnish Plaintiff Yang Lan's reputation as a successful female media entrepreneur and role model to women in China by publishing sex-focused defamatory statements about Plaintiff Yang Lan. This is the Debtor's modus operandi.

15. For example, on September 15, 2017, the Debtor published a video recording of himself to his "郭文贵" YouTube account wherein the Debtor stated that Plaintiff Yang Lan (a) maintained many "lovers" and engaged in an extra marital affair with "her sexual Xinjiang boyfriend," (b) "used genitals to build this powerful relation of law and order" and had extra marital affairs with Meng Jianzhu and Sun Lijun in exchange for the privilege of "presid[ing] over major national events," (c) had extra marital affairs with "sexually perverted" government officials "which led to her uterine cancer," and (d) "secretly had surgery on her uterine cancer in Beijing Concord Hospital."

16. At the time the State Court Litigation was filed, this video had been viewed over 296,220 times since the Debtor published it and was still available for viewing on YouTube.

17. On September 16, 2017, the Debtor stated in a live-streamed YouTube video that (a) "Yang Lan's Sun TV is for money-laundering and money scam" and (b) "Yang Lan deceived people by helping the great afforestation."

18. At the time the State Court Litigation was filed, this video had been viewed over 380,499 times and was still available for viewing on YouTube.

4

19. On September 19, 2017, the Debtor stated in a live-streamed YouTube interview with Chen Xiaoping on YouTube user Mingjing Huopai's account[1] that Plaintiff Yang Lan (a) has "serious sexually transmitted diseases," (b) is "full of [sexually transmitted] diseases," (c) "sleeps with men who suffer[] from skin diseases," (d) had an extra marital affair with "Meng Jianzhu" which was filmed and "will shock everyone," (e) "has infectious and erosive uterine cancer," (f) has engaged in numerous extra marital affairs, and (g) "asks [her husband] to take her to sleep with men from home and abroad."

20. At the time the State Court Litigation was filed, the video of this interview had been viewed at least 385,459 times and was still available for viewing on YouTube.

21. These statements are entirely false and defamatory.

22. The Debtor was aware of the falsity of these statements at the time that he made them, and he made such statements with the intent of harming Plaintiffs.

    *(b)    Defamation Against Plaintiff Mr. Wu (State Court Complaint ¶¶ 76-90)*

23. The Debtor has sought to harm Plaintiff Zheng Wu by tarnishing his reputation largely by falsely accusing Plaintiff Zheng Wu of horrific crimes and heinous acts against children.

24. For example, on September 15, 2017, the Debtor published a video recording of himself to his "郭文贵" YouTube account wherein the Debtor stated that Plaintiff Zheng Wu (a) "came to the United States to find all those who may be close to [Guo] and those who know [Guo]" and then "wanted to pay to have [the Debtor] killed," (b) kidnapped Fu Zhenghua, (c) "is a typical Chinese trained spy," (d) tried to bribe the Debtor's attorney with "$10 million to fight against Guo," (e) sought to hire "mafia killers" to kill the Debtor, (f) "continue[s] to hire to

---

[1] YouTube user Mingjing Huopai has approximately 130,545 subscribers.

murder" in New York, and (g) "participated in [the] killing of Lei Yang" (a 29 year-old Chinese environmentalist who died while in police custody), (h) hired Li Dong "to eliminate all people who were aware of" money that the Debtor purports Plaintiff Zheng Wu received "overseas as the political stability fee," (i) has fathered "illegitimate children abroad," and (j) is a "gangster[]."

25. At the time the State Court Litigation was filed, this video had been viewed over 296,220 times since the Debtor published it and was still available for viewing on YouTube.

26. On September 16, 2017, the Debtor stated in a live-streamed YouTube video that "Wu Zheng's academic credentials are fabricated."

27. At the time the State Court Litigation was filed, this video had been viewed over 380,499 times and was still available for viewing on YouTube.

28. On September 19, 2017, the Debtor stated in a live-streamed YouTube interview with Chen Xiaoping on YouTube user Mingjing Huopai's account that Plaintiff Zheng Wu (a) participated in the murder of Lei Yang, (b) participated in a criminal conspiracy involving the raping of children, (c) asked his wife, Plaintiff Yang Lan, "to sleep with [a British] foreigner while he watched the door," (d) used his wife as a "sex tool" and took his wife "time and time again" to sleep with foreign officials, and (e) "is a trained spy of Shanghai."

29. At the time the State Court Litigation was filed, the video of this interview had been viewed at least 385,459 times and was still available for viewing on YouTube.

30. These statements are entirely false and defamatory.

31. The Debtor was aware of the falsity of these statements at the time that he made them, and he made such statements with the intent of harming Plaintiff Zheng Wu.

32. For example, approximately one-third of the way into the September 19, 2017 live-streamed YouTube interview, Chen Xiaoping cautioned the Debtor that Plaintiff Zheng Wu "will sue [Guo]" if the Debtor continued with his defamatory statements about Plaintiff Zheng Wu. The Debtor responded by saying "[d]on't worry, I especially welcome him to sue me," and then continued making defamatory statements about Plaintiffs.

33. Thereafter, on May 9, 2018, the Debtor made the following posting on Guomedia.com: "Dear comrades: Wu Zheng has been in New York for a week! He is telling the story about his grandfather saving tens of thousands of Jews again! And continue to develop his espionage network! Continue to Lan-Jin-Huang (blue-gold-yellow) the United States! And attend his family member's graduation! After meeting his lover in London, Miss Nana...... he came to New York again! What's the purpose of opening the club......I will send the photos of the video screenshots to Ms. Yang Lan! Everything has just begun".

34. "Blue-gold-yellow" is a term the Debtor uses to describe the PRC's tactics to target individuals – through bribes, blackmail and other nefarious means – and to coerce them to work for the PRC government.

35. These statements, including the multiple statements that Plaintiff Wu is a spy and that Plaintiff Wu is an adulterer, are entirely false and defamatory.

36. The Debtor was aware of the falsity of these statements at the time that he made them and he made such statements with the intent of harming Plaintiff Zheng Wu.

37. Moreover, this posting also reveals that the Debtor, either personally or in conspiracy with other third parties, was secretly following and monitoring Plaintiffs' activities in New York, including making specific references to Plaintiffs' personal family affairs.

KBM/M1738/1001/1836686v1
06/20/22-HRT/KBM

> *(c)    Other Bad Acts by the Debtor Including Threats of Violence and Intimidation Against Plaintiffs (State Court Complaint ¶¶ 91-108)*

38. The Debtor has taken to implicitly threatening or directly encouraging violence as against Plaintiffs. For example, in the September 19, 2017 live-streamed YouTube interview with Chen Xiaoping, the Debtor suggested that Plaintiff Yang Lan will "not be able to live a long life," and that she may "disappear at any time."

39. In the same breath, the Debtor also stated that Plaintiff Zheng Wu "may be killed at any time as he did too many bad things, he may get into a car accident or die of disease at any time, both are possible."

40. As to when such harm might befall either of the Plaintiffs, the Debtor went on to state: "[r]ight now, [I] cannot give any specific details."

41. In an escalation of his intimidation campaign, the Debtor enlisted third parties, including his son Guo Mileson ("**Mileson**"), into his plot to physically intimidate and silence Plaintiffs.

42. Specifically, on or about April 6, 2018, Plaintiffs and their family were dining at a restaurant named Estiatorio Milos in London, U.K. In a deliberate attempt to intimidate Plaintiffs, Mileson and a cohort of threatening bodyguards, at the instance and direction of the Debtor, secured four tables surrounding Plaintiffs, their family and their dining companions.

43. Then, while Plaintiffs, their family were dining, Mileson took photographs of Plaintiff Zheng Wu, his family and his dining companions. Thereafter, the Debtor posted these photographs of Plaintiffs and their family and dining companions eating dinner.

44. The circumstances under which Mileson and his cohorts surrounded Plaintiffs and took these photographs demonstrate that the Debtor, or third parties on his behalf, had engaged in some manner of surveillance of and/or eavesdropping on Plaintiffs.

45. Specifically, Plaintiffs' reservation at Estiatorio Milos was under the name of a third party, not either of the Plaintiffs. Moreover, the identity of the party that made the reservation was only known by Plaintiffs and their other dining companions. In fact, the identity of the person making the reservation was not even known to the restaurant itself until approximately 3 hours prior to Plaintiffs' seating.

46. Accordingly, this information must have been ascertained though some form of eavesdropping or other invasive and threatening monitoring of Plaintiffs, either physically or electronically.

47. In addition to this conduct in London, as noted above, the Debtor's May 9, 2018 posting demonstrates that the Debtor, either himself or through others, was surveilling Plaintiffs during their trip to New York.

48. This abhorrent conduct by the Debtor to physically intimidate the Plaintiffs is consistent with the Debtor's efforts to bring injury to the Plaintiffs.

**II.    The Commencement of the Bankruptcy Case.**

49. On February 15, 2022, the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code**") commencing this bankruptcy case.

50. The Debtor's list of largest unsecured creditors identifies each of the Plaintiffs as one of the largest non-insider creditors in this case. (ECF Nos. 4, 20).

51. The Plaintiffs' Claims are personal injury claims that are expressly excluded from matters in which bankruptcy courts may enter final judgments or that may be estimated by bankruptcy courts for distribution purposes, nor do bankruptcy courts have jurisdiction to try such claims. *See* 28 U.S.C. §§ 157(b)(2)(B), (O), 28 U.S.C. §157(b)(5). Plaintiffs demand a trial by jury on their claims against the Debtor and do not consent to trial in this Court.

KBM/M1738/1001/1836686v1
06/20/22-HRT/KBM

**COUNT I – DECLARATORY JUDGMENT**
**Nondischargeability of the Defamation *Per Se* Claim**
**Pursuant to 11 U.S.C. § 523(a)(6)**

52. Plaintiffs repeat and reallege each paragraph above as if fully set forth herein.

53. Individual debtors are not entitled to a discharge under the Bankruptcy Code from any debt "for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6).

54. The first cause of action in the State Court Complaint sets forth the Plaintiffs' claim against the Debtor for the intentional tort of Defamation *Per Se* (the "**Defamation *Per Se* Claim**"). State Court Complaint ¶¶ 109-121. As set forth above and in the State Court Complaint, which is incorporated herein by reference, Debtor intentionally and with malice repeatedly defamed Plaintiffs seeking to cause them injury. Through speech, postings to social media accounts and websites, and various other writings, the Debtor made statements meant to convey (i) that Plaintiffs have and continue to engage in outrageous acts of criminality, such as murder and the raping of children, (ii) that Plaintiff Yang Lan has sexually transmitted diseases, and (iii) that Plaintiff Yang Lan engaged in extra marital affairs to advance her career.

55. These statements have damaged Plaintiffs' reputations among a large number of people, and have caused them to associate Plaintiffs with sexual depravity, promiscuity, and criminal behavior.

56. The Debtor knew those statements are false and made those statements with the intent of maliciously damaging Plaintiffs and their reputations, harming their business interests and to induce others to not do business with them. The Debtor had neither the authorization nor the privilege to make such false statements. Damages to the Plaintiffs are presumed for their Defamation *Per Se* Claim.

57. The Debtor's conduct resulting in the Defamation *Per Se* Claim constitutes willful and malicious injury to Plaintiffs within the meaning of section 523(a)(6) of the Bankruptcy Code. Accordingly, in the event that the Debtor is determined in the State Court Litigation to be liable on the Defamation *Per Se* Claim, the Debtor's liability (including actual, presumed, and punitive damages, as well as interest, fees and costs) for the Defamation *Per Se* Claim is nondischargeable.

### COUNT II – DECLARATORY JUDGMENT
**Nondischargeability of the Defamation Claim Pursuant to 11 U.S.C. § 523(a)(6)**

58. Plaintiffs repeat and reallege each paragraph above as if fully set forth herein.

59. Individual debtors are not entitled to a discharge under the Bankruptcy Code from any debt "for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6).

60. The second cause of action in the State Court Complaint sets forth the Plaintiffs' claim against the Debtor for the intentional tort of Defamation (the "**Defamation Claim**"). State Court Complaint ¶¶ 115-121. As set forth above and in the State Court Complaint, which is incorporated herein by reference, Debtor intentionally and with malice repeatedly defamed Plaintiffs seeking to cause them injury. Through speech, postings to social media accounts and websites, and various other writings, the Debtor made statements meant to convey (i) that Plaintiffs have and continue to engage in outrageous acts of criminality, such as murder and the raping of children, (ii) that Plaintiff Yang Lan has sexually transmitted diseases, and (iii) that Plaintiff Yang Lan engaged in extra marital affairs to advance her career.

61. These statements have damaged Plaintiffs' reputations among a large number of people, and have caused them to associate Plaintiffs with sexual depravity, promiscuity, and criminal behavior.

62. The Debtor knew those statements are false and made those statements with the intent of maliciously damaging Plaintiffs and their reputations, harming their business interests and to induce others to not do business with them. The Debtor had neither the authorization nor the privilege to make such false statements. Plaintiffs have suffered harm as a result of the Debtor's conduct, in a monetary amount to be determined at trial.

63. The Debtor's conduct resulting in the Defamation Claim constitutes willful and malicious injury to Plaintiffs within the meaning of section 523(a)(6) of the Bankruptcy Code. Accordingly, in the event that the Debtor is determined in the State Court Litigation to be liable on the Defamation Claim, the Debtor's liability (including actual, presumed, and punitive damages, as well as interest, fees and costs) for the Defamation Claim is nondischargeable.

## **RELIEF REQUESTED**

WHEREFORE, the Plaintiffs respectfully request that the Court grant judgment as follows:

(a) Declaring the liability of Debtor to Plaintiffs for the Defamation *Per Se* Claim, as determined by the State Court in the State Court Litigation, to be nondischargeable pursuant to 11 U.S.C § 523(a)(6);

(b) Declaring the liability of Debtor to Plaintiffs for the Defamation Claim, as determined by the State Court in the State Court Litigation, to be nondischargeable pursuant to 11 U.S.C § 523(a)(6); and

(c) Granting such other and further relief to Plaintiffs as may be just and proper.

Dated: June 20, 2022

*Kristin B. Mayhew*
Kristin B. Mayhew
**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
30 Jelliff Lane
Southport, CT 06890
(203) 319-4000
kmayhew@mdmc-law.com

- and -

Carollynn H.G. Callari (*pro hac vice*)
David S. Forsh (*pro hac vice*)
**CALLARI PARTNERS LLC**
One Rockefeller Plaza, 10th Floor
New York, NY 10020
(212) 202-3050
ccallari@callaripartners.com
dforsh@callaripartners.com

*Attorneys for Rui Ma*